v. Highland Capital Management, L.P. Council, if you would come forward. We will first hear from Mr. Jaffe. Mr. Jaffe, you have allotted 12 minutes with 3 minutes for rebuttal. Your Honors, and may it please the Court. I think the simplest way to resolve this case is simply on the textual interpretation of the Siri order, understanding that in legal context the phrase commence and pursue a claim or cause of action against Mr. Siri is a sequential event. Commence is the beginning, pursue is the continuation. That is what numerous legal dictionaries say, many legal cases including several involving contempt and injunctions that use the phrase pursue a claim. And the fact that there are miscellaneous dictionary definitions using the word pursue out of context does not change a thing. In any statutory interpretation, constitutional interpretation, you take it, you would go for the legal definition, you would go for the contextual definition, and at a minimum, even if you thought there was some conceivable plausibility with the broader definition, more general definition, that just creates an ambiguity. It's not the better definition. Counsel, if there was an ambiguity in the bankruptcy court's order, why not go to the bankruptcy court? We're not interpreting a statute here, we're interpreting an order that was written by a bankruptcy judge, and if there was any ambiguity or question about an action that might or might not be violative of that order, wouldn't the thing to do would be to go back to the bankruptcy court and get some clarification? Well, in retrospect, that might have been the safer bet, but they didn't think there was an ambiguity. They read the legal definitions, they understood that nothing happened until you commenced the claim, and they very consciously did not commence a claim, but instead asked for permission and a modification of the very order that we're talking about, so that sometime in the future they could commence a claim. But that is not itself the commencement of the claim, much less the pursuit or continuation of a claim already commenced. And so, sure, we could speculate that they could have done other things that might have caused them less grief, but that's not contempt that they perhaps made a decision that wasn't the safest bet or pled mother may I with the bankruptcy court judge. And remember, the bankruptcy court judge had already evinced a meaningful hostility to these folks. Well, that's why you can appeal to the district court, but in this case you went straight to the district court to seek leave instead of first running it past a judge who, as you just said, might be a bit hostile. Correct, but the motion was not merely a motion to seek leave. If you recall, it was a motion effectively to modify or interpret the Siri order. It's not like they sought leave and didn't tell anybody that there was a Siri order out there, right? At the very front they said, hey, there's this order that says we can't do this, we're just letting you know, and we think it's an improper order, we think it shouldn't apply to this, and would you please change it? It's kind of like a challenge to the Siri order coupled with the, and if you agree with us, if and only if you agree with us, then yes, we would like to add Siri, but we're not going to do it until you agree with us, and they also gave the district court the option of remanding it back to the bankruptcy court to say, well, I think the exculpation part may not be good, but you still have to get permission, so go back, and that was also in the motion. Whatever this is, whatever other things they could have done, whatever we could speculate, it wasn't contempt. It was a recognition of an order that they recognized constrained what they wanted to do, a request for modification or permission from a court with real authority over the bankruptcy judge, if they were wrong, if they didn't use the proper procedures, if they could have done something different. These are all reasons to not succeed, but they're not contempt of the order. They didn't violate the order. They went out of their way, actually, not to violate the order by deleting the, and this shall be deemed filed, from the proposed order in their motion, because they didn't want it to be automatic. They wanted to make the argument in front of the district court judge that this order was excessive. That is a very reasonable thing. Indeed, my opponents suggest that that's very much what they should have done. One of the options that they suggest, when we're talking about collateral orders, for example, is, well, after we told you we objected to your motion, you could have sought modification. Well, that's what they did. They sought modification. They just sought it from the district court, but seeking modification of an order that you think is improper is not contempt of the very order you're challenging. That an order that says that you may not challenge me, I think that would violate due process. It would violate the right of petition. It would violate all kinds of things. That can't be a violation of the SERE order to say we think the SERE order is improper. So the simplest way for you to resolve this case is to say, look, the SERE order said commence and pursue. Yeah, they could have done lots of other things right, but whatever they could have done or should have done or might have done, it's not a clear violation of a clear standard. And in fact, the better interpretations legally and contextually with the language suggest that pursue only happens after commencement. So you commence a suit by filing a claim, you pursue a claim or a suit that has already been filed. So imagine the suit had already been filed against SERE before the order was entered. You would have to get permission to continue to take that position, to do whatever else you were going to do in that suit. That's what the work happens on the word pursue. If you take their version of it and say pursue means anything with a goal of this, well then the word commence is meaningless because of course commencing a lawsuit is also pursuing a lawsuit. And why would you have both words? It makes no sense. So I would say that's the simplest thing. Under the clear standards, legal standards, de novo review for contempt proceedings, if it's not a clear and unambiguous order prohibiting what they did, it's not contempt and we should never have gone down the path of having the hearing. If for whatever reason you think that you can find a clear violation from the mere request to prospectively, if and only if the judge agrees with you, file a claim later, I would say the second thing is that whatever damages were in this case were not caused by that motion. Because that motion had already been dismissed before the motion for sanctions, the motion to hold them in contempt was ever filed. The only damages came from the motion itself filed by my opponents, like a self-inflicted wound. And we make the analogy in our briefs to tort claims, that you can't bring a tort claim saying that my damages are the attorney's fees that I'm going to incur prosecuting the tort claim. Damages first, fees later. And here it flips that entirely on their head. No damages from the motion that they never responded to. And mind you, they don't even claim damages neither in the original motion for an order to show cause nor in their appellate brief. They don't say we were damaged by the filing of the motion. They say we were damaged by our attempts to enforce the Siri order. But of course the Siri order didn't need enforcing at the point they filed that motion because the conduct had already ceased. So perhaps it needed punishment, but that's criminal contempt. That is not civil contempt. The conduct had already stopped. There's nothing to remedy anymore. And there have been no real damages incurred. And they don't claim any real damages. So my point of all this is merely to point out that saying attorney's fees are compensatory is only true if the attorney's fees were incurred as a function of the violation, not as a function of an effort to stick it to them and punish them and teach them who's boss, which is what this hearing ultimately was. Because remember, the facts of the violation, the supposed violation, were clear. We filed a motion. We filed a motion in open court with our names on it. It wasn't like this was hidden and you had to discover something. What the discovery in the hearing was about is how badly can we stick it to Mr. Dondero because the judge doesn't like Mr. Dondero and suspected he was Machiavelli pulling the strings behind the scenes or something like that. But that's not a compensatory phenomenon. That's a punitive phenomenon. Because for compensatory purposes, whatever the costs might have been, the charitable death could plainly foot them. It's not like you needed another deep pocket to make sure that the respondents were compensated properly. So I don't know that there's any realistic way to view the days of discovery and depositions and testimony and what was Mr. Dondero doing on Tuesday at lunch with the lawyers just didn't matter for the alleged violation. They don't go to the violation. They go to who else can I smack on the hand for the violation and that's punitive. That's asserting the authority of the bankruptcy court. That's maybe trying to deter future behavior by really giving it to you. But had she made them stand in the corner with a dunce cap and then charged them for the attorney's fees while the other side watched, it would have been the same thing. It wouldn't have really advanced the ball any. It just would have been punishment. And so I just point you to the cases that say that when deciding whether contempt is civil or criminal, you would look to the primary purpose. So even if you could hypothesize some tiny little bit of compensatory effort here, the $240,000 plus the $100,000 sanction, if you dare to challenge me on appeal, can't be interpreted as anything but punitive and trying to vindicate the authority of the court, which is beyond the power of bankruptcy court, of course, and so inappropriate. And the whole thing would therefore be inappropriate. Lastly, I would just point out, I don't think you need to reach all of these things, but if you somehow get to them, we think the Barton Doctrine is an extension of extra-textual, extra-statutory powers that's inappropriate. You don't have to go that far. We preserve that argument, obviously. All you have to note is to say it doesn't reach CEOs who are not actually bankruptcy trustees or their stand-ins or the debtor in possession, actually. You've held as much, quite frankly, in the final order, in the confirmation order appeal in this case, that Siri can't be exculpated, and then you held right after that that the injunction and gatekeeping provisions weren't overbroad because you just excluded Siri. So it's okay. That's been cured. So at the end of the day, I sort of feel like that part should be straightforward. I mean, the only question is, is this a collateral attack? What I would say is, it was a continuation of the attack raised in the very motion to amend, for leave to amend. So it's not collateral in that sense. We sought a modification of the order. It was denied for other reasons, but then we immediately got slap of contempt. So we re-raised the same point we had made before the contempt as a defense to the contempt. I don't think that's collateral in the proper sense of the word. And if the answer was, well, you should have just renewed your motion to the district court, that's a little odd, because we were being punished for that very motion, the notion that we would then renew it after the court just told us she thought it was contempt. Then we really would have known that it was a violation of what she thought her order was, and that would have really gotten us in trouble. So we raised it in the only forum available to us, which is as a defense, renewing the argument we had made before we committed the supposed contempt. So I don't think it's collateral in the proper sense. It obviously happened well before the final confirmation order was dealt with by this court. So as a point, before anything was raised judicata, this case was still pending. I don't think the raised judicata applies in this case, even though you said that it would apply vis-a-vis the confirmation case, where, yes, that's a different order, a different case, and by then it would be final, but not so much in the ongoing appeal from this case started well before that. If there are no other questions, I'll reserve my time for rebuttal. Thank you. Thank you. Counsel. Mr. Cesare, if I'm pronouncing your name correctly, sir, you have three minutes. Good morning, Your Honors, and may it please the Court. The DAF appellants have given you a number of reasons why they think that the sanctions award against all the appellants should not stand. I just wanted to focus my time briefly on a few reasons unique to James Dondero, why the sanctions award must be vacated, and also to highlight the overreaching nature of the award. First, Dondero was never given any notice that due process requires before he was being sanctioned. Neither Highland's motion for contempt nor the Bankruptcy Court's show cause order specifically mentioned Dondero by name, and it instead both used a common terminology, saying that only the violators, and that's a capitalized term, would be at risk of contempt. The violators were four different categories. There was the DAF, there was CLL Holdco, there was Spotty and Company, and there was anyone who authorized the DAF and CLL Holdco to file the Siri motion. Dondero is not mentioned by name, and he knows that he's not amongst those who authorized the Siri motion. He also knows that Highland knows that because only Mark Patrick, the violators, the managing member of the DAF's general partner, had the power to authorize the DAF or CLL Holdco to bring an action. The Bankruptcy Court also knew that Dondero was not included amongst the term violators. It adopted that term and made a separate category to capture Dondero to make sure that he showed up at the show cause hearing, at the contempt hearing. But it had to create a separate category for him because it knew it wasn't mentioned in any of the previous categories, including those who authorized the Siri motion. And beyond the fact that neither the motion nor the show cause order actually mentioned Dondero and gave him the notice that due process requires that he needed to prepare a defense for a contempt sanction, Dondero could not and did not violate the Siri gatekeeping order. That order prohibited the entity from commencing or pursuing a claim against Siri without Bankruptcy Court approval. But Dondero is not an entity, so the order doesn't even apply to him. He also didn't commence any claim against Siri because no action against Siri ever commenced. And while the term pursue has been the subject of a lot of debate in this case, there's no definition that's been provided by anybody that applies to Dondero's conduct and his involvement in this case. The Bankruptcy Court effectively read the term pursue out of the order entirely. It said he could be held liable simply because he sparked the Highland District Court motion, which was a precursor to the Siri motion, didn't name Siri, and wasn't the basis for contempt. Okay, counsel. Thank you. We have your argument. You've reserved two minutes for rebuttal. We'll hear from Mr. Englert now. May it please the Court, my name is Roy Englert, and I represent the Appalooh Highland Capital. This is not a difficult appeal, and I hope to use considerably less than my allotted 20 minutes. The Siri order was never appealed to the District Court or to this Court, and a year ago this week, this Court wrote in footnote 15 of its confirmation appeal opinion, the independent directors, agents, advisors, and employees, as well as Siri and his official capacities, are all exculpated to the extent provided in the January and July 2020 orders, the orders being enforced here, given the order's ongoing race judicata effects and our lack of jurisdiction to review those orders. So if this Court didn't have jurisdiction to review those orders, the District Court certainly didn't have jurisdiction to review those unappealed orders. Going to the District Court with the fig leaf of saying we want to object to an order we never appealed doesn't cut it. I'm sorry, I'm not sure I followed that. Our confirmation decision postdates the motion filed in this case, right? It does. So you're not saying that they shouldn't have filed because we ultimately held in footnote 15? No, not because this Court ultimately held, but because that was the law. The Court correctly held what had been true all along, which was that those orders were unappealed and race judicata. But in a contempt proceeding, the real question is, at the time that the appellants filed their motion, did they or should they have known not to do that? And they certainly should have known not to do that because they had had the opportunity to appeal. They didn't appeal. In fact, CLO filed an objection to the Siri order and then withdrew its objection. If the appellants had filed, or DAF, had filed the motion for leave in the Bankruptcy Court, exactly the same document that was filed in the District Court, it was filed in the Bankruptcy Court. Would that be contempt? No, that would not be contempt. So it's just that it was filed in the District Court? Yes. And what were the costs to your clients incurred by the fact that it was filed in one court versus the other? The costs were the need to pursue contempt because they had violated the gatekeeper order. And this Court has specifically approved awarding the cost of pursuing contempt as a civil contempt sanction. It's Judge Starr, in the opinion below, in footnote 81, cited the Skylab case, I believe it is, which, although that one is unpublished, it cites prior published opinions of this Court to the same effect. Do you agree with your friends on the other side that the only, in order to be compensatory under a good year tire, the only costs that your clients could recover would be the delta between filing a contempt motion in the District Court versus filing a contempt motion in the Bankruptcy Court? Does that make sense? Like, it's just the difference between what you did do and versus what you could have done. No, Your Honor, because to be compensatory, the damages have to have been caused by the contempt. But the filing necessitated bringing the contempt motion, which in turn led to the expenses that the Bankruptcy Court awarded. Yeah. I apologize. That was an inartful question. Maybe I can get at it this way. So does it matter if Dondero was pulling the strings behind DAF filing this in the District Court? Yes. And why does that matter? Because violators with a capital V was defined to include authorizing persons, and the District Court's finding of fact that Dondero was an authorizing person is not clearly erroneous. Fair. So that matters as to Dondero. But it matters to DAF. So DAF is an entity, correct? Yes. And DAF could not file, under the gatekeeping order, this motion regardless of who prompted it? That's correct. So DAF would have been in contempt either way? I'm sorry? DAF would have been in contempt. Under your theory, DAF was in contempt with or without Dondero being involved? Yes. So why would we need to have like a long, multi-day hearing about whether Dondero was involved if DAF's involvement was sufficient to determine the contempt? Because the Bankruptcy Court needed to figure out who had contemned its authority, contemned its order, who had violated its order. Well, you knew DAF did. They filed it. I don't understand why that wouldn't have been sufficient. Well, the contenders are jointly and severally liable, but the Bankruptcy Court has every right and reason to vindicate its own authority by finding out who is responsible for violating its orders. So it's not just the parties. It's the integrity of the courts that's at stake in this and any contempt case. But under your theory, isn't the entire contempt completed upon the filing of the motion, right? The filing of the motion to amend the complaint. The thing that was filed in the district court, that's the entirety of the contempt, right? It's not like they were hiding documents or they were doing other things. That's correct. The filing of the motion with an attached complaint against Mr. Seery, which would have been automatically filed if the district court had granted the motion, was the contempt. And if it had been filed in the Bankruptcy Court, the exact same document with the same request said, you know, we recognize that the gatekeeping order prevents us from pursuing this claim, but we would like to pursue it. We think we have good grounds to do it. The gatekeeping order specifically says you can get authorization to pursue claims, right? So all we need is permission. So we're asking for the permission. Every cost associated, every cost your clients incurred to fight that off, to say, no, please don't give them the authorization. This is inappropriate. None of that's compensatory, right? None of that would be sanctionable. That's all above board and totally fine and consistent with the circuit. If they had obeyed the gatekeeper order, there wouldn't be compensation for seeking contempt for their having violated the gatekeeper order. Right. But the thing I'm getting hung up on is that it seems like part of the real problem is that this motion was filed in the wrong court, right? Well, this motion was filed in the wrong court in a very cynical and manipulative forum shopping move. Well, it's specific. It's hard. This is the I want you just to walk me through it because you keep losing me on the I realize that there's a ton of bad blood in this case and everyone's fighting with each other for a long time. We're obviously outsiders. So help walk me through it. It's hard to say cynical and bad blood when the text of the motions discloses everything that's going on. Here's the order. Here's what we'd like. Here's why we would like it. If we're wrong, please tell us. We're not trying to violate anything. We're trying to do what we're supposed to do. I get it. You think it's in the wrong court and we can even just concede for the sake of discussion it's in the wrong court. I'm just having a hard time with the idea that it's contemptuous when it's candid. The purpose of the gatekeeper order is to give the bankruptcy court the first say, not the second say, about any proposed lawsuit covered by the terms of the gatekeeper order. So going to a different court, whether it's the district court or a state court in Texas or a state court in Louisiana or a state court in New York, is violating the gatekeeper order. It is contempt of court. And yes, to say that if they had done, if they'd obeyed the gatekeeper order, they would have filed, could have filed the same document before the bankruptcy court is true. But the whole point of the gatekeeper order is to make them file it there and not somewhere else. That's contempt. So why would it, suppose I'm the district judge or the bankruptcy judge for that matter and we're, so we're not here on appeal. We're just, we're doing this ad amnesio, trying to figure this out. They file on the wrong court. I say, okay, well you file your motion for sanctions. I say, okay, everybody, let's get together and let's have a hearing on the motion for sanctions. I would, I'm going to award Mr. Englert a thousand dollars, right? For the cost associated with filing a document that says, hey, your honor, this was filed on the wrong court. It's like a one page document that says filed on the wrong court, please sanction them a That's how much it costs me to prepare this one page document, pointing out the fact and then requesting it to be filed and sent in the bankruptcy court. I don't understand the multi-day hearing and hundreds of thousands of dollars of fees and sanctions and penalties for a thing that is evident by the caption. Like literally you could look at the caption on the motion and say, filed on the wrong court. We see stuff filed on the wrong court every day. Because people can make honest mistakes and file on the wrong court. That's extremely different from what happened here where the purpose of the gatekeeper order was both to protect Mr. Seary and others from vexatious litigation and from having to respond to attempts to make an end run around the bankruptcy court and to vindicate the bankruptcy courts on authority and going quite intentionally to a court that was not the bankruptcy court and tendering a lawsuit against Mr. Seary and saying, please let us file this is, is, is exactly what the gatekeeper order was intended to prevent. But let's just say I'm with you, say I agree with you and I agree with you that they shouldn't done it. I agree that it was contemptuous. Let's just get all the way down to the end of this. Isn't the compensatory remedy to you and your clients like whatever it costs to write a one page document and file it, let's just, you know, use my hypothetical, say it's $1,000 because that's what it would take you to, that's the only thing that you had to do in order to get your sanctions because you just had to say, your honor, filed on the wrong court. It's in the first line. It says in the district court instead of in the bankruptcy court, please give me $1,000 for filing the document. I think not, your honor. I think this court has precedence directly on point. I think the Bradley case is directly on point. I think the cases Judge Starr has cited, footnote 81, are directly on point. Are those— The cases cited in those cases are directly on point that if by going into contempt, a party forces the other side to bring a contempt motion and litigate it, the costs of litigating the contempt motion are compensatory. Absolutely. What's the best post-2017 decision? And by that I just mean after Goodyear Tire because I recognize we have lots of cases. You're totally right about what the rules were pre-Goodyear Tire. But after Goodyear Tire where we know that you only get the compensatory delta, how in the—I'm just having—I'm struggling with how you get $200 and some odd grand. I believe the Skyport Global case itself is post-2017. I'm not 100%— I'm sorry. I couldn't hear. Skyport Global, the case that Judge Starr cited in the footnote 81. I do want to emphasize that the loophole that my adversaries think they found by parsing very carefully the words commence or pursue can be found only by completely ignoring the underlying purpose of the order. If no rational person would write an order that says you have to come to me, the bankruptcy court, first if you're going to bring a lawsuit, but you don't have to come to me, the bankruptcy court, first if you're going to file a motion for permission to bring a lawsuit, no one would intentionally write that order, nor would the phrase commence or pursue be how one wrote that order if that were the intent. So all this playing with dictionary definitions, I think it's just completely ignoring context. With regard to Mr. Dondero, first of all, he is an authorizing person, which is a capital V violator. That's the end of that discussion. With regard to his notice, he filed a limited objection, specifically complaining that he might be held in contempt. His lawyer stood up in open court, specifically complaining that he might be held in contempt. So the idea that he didn't have notice just has no substance to it, and again, it's a factual finding reviewed under the clearly erroneous standard anyway. I do not have other points to make, so unless the Court has further questions, I will submit. Okay. Thank you, Counsel. Thank you. We will hear rebuttal. Mr. Jaffe, you have three minutes. Your Honors, my opponents conceded that this was punitive. He said that the whole point of this was to vindicate the authority of the Court. That is the definition of punitive contempt, criminal contempt, not civil contempt. He is trying to conflate the costs of proceeding with a criminal, an improper criminal contempt hearing with the remedy of recovering your attorney's fees if you already have a compensatory purpose. But there was no compensatory purpose triggering this motion. It was strictly punitive, to teach us a lesson, to enforce it. There's nothing to enforce. We had stopped the contemptuous behavior. It had already stopped well before the motion was filed. I mean, if you just look at the cases, I think Lamar Financial, this circuit case that we cite, the primary purpose, and he's literally conceded it, that the primary purpose of this was to vindicate the authority of the Court and to teach us that we couldn't do this. There was no point there. There had been no damages incurred to that moment, and generating your own damages doesn't work in contempt any more than it works in a tort suit, and that's functionally what contempt is. It's like a tort. It's a tort remedy. So that's one thing. Secondly, he said we needed to bring the contempt. No, you didn't. There was no arm. Why did you need to bring the contempt motion? There was no need. There was just a desire, and again, that desire was punitive. The third thing I would say is that he said the whole point, the justification for these gatekeeping orders, you have to look at that in context. Well, let me point out that the justification for these gatekeeping contexts doesn't really work with someone like Siri. So if you're just looking in the thin air about what the policy reasons are, they don't really apply to the CEO of a thing. You've already held that in the final order. Whether or not we are going to use Barton, he can't rely on that as an interpretive canon when it's plainly wrong. And second of all, the whole point of Barton was actually to stop you from going to foreign courts. We didn't go to a foreign court. We actually went to the District Court with authority to review this bankruptcy judge and to review the orders of this bankruptcy judge. That does not be I'm dragging you around the country. It's I'm going to your boss. That is not the purpose of a gatekeeping order, is to stop me from going to your boss, which is what we sort of did. And lastly, he said we're being disingenuous. There's no way we were being disingenuous. We candidly said we think the gatekeeping order is wrong. Yes, we didn't like the gatekeeping order and we didn't agree with it. That's not disingenuous. That's making a legal argument, a perfectly valid legal argument. That's not contemptuous. It may be wrong. It may not win. That's fine. It's not contempt. The last thing I'd say is this resort to the in-the-air purposes of gatekeeping and Barton orders as being the important context, that's the excuse of someone who has no text on their side. I have Black's Law Dictionary. I have multiple cases using the exact phrase, commence to pursue, distinguishing what this commenced and what it's to pursue, page 24 to about 31 of our opening brief. These cases are not random hair-splitting. They're quite clear. Thank you, counsel. You have one question. One quick question. Mr. Jaffee, I'm sorry. Can I ask? I'm sorry. I just did want to interrupt the rebuttal to the extent I could, but one question on authority. I asked Mr. Engler, and I'm curious if you have a different answer, do we have cases interpreting the nature of compensatory sanctions awards, post-Goodyear, tire? So I understand that this is really a question about post-2017 precedent to the extent that Goodyear tire is inconsistent with what we did before. I'm still not sure I heard what he said, but I thought he gave me Skyport Global, which is a 2016, so that's pre-Goodyear tire, and it's unpublished. Do you have anything, and maybe I misheard, so I apologize if I did. Off the top of my head, I don't know the dates of the cases I'm thinking of. There are cases that talk about causation, that at the end of the day, this is just a case that we have to do the counterfactual if we had not committed to contempt, but instead filed it in the right court. It's not that we would have filed the motion. It's just he's saying we should have filed it in a different court. It would have cost them many times more than whatever would have happened in the district court, but more importantly, none of that matters if there was no need to bring the contempt motion. All right. Thank you, counsel. Brief rebuttal from Mr. Cesar. I'd like to make just two brief points. First, counsel for the other side said that the district court found that Dondero was a violator because he authorized the motion. That is both incorrect reading of the order because the order only gave notice of the violators of the four categories that I mentioned, and the district court's reading of the order was clearly erroneous because he thought that it was not a defined term even though it was a defined term. As far as the evidence of whether Dondero actually authorized anything, Mr. Patrick said that he authorized the serial motion and that Dondero did not. Dondero said that Mr. Patrick authorized the serial motion and he did not. There is no evidence that he authorized the serial motion. There is no evidence that he had the power to do so. Finally, I wanted to emphasize that when we appeared at the hearing, we appeared under objection. We objected both that Mr. Dondero was not included in the debtor's motion or proposed order and that he objected to any implication that he'd been named by the bankruptcy court as an implied or alleged violator. His attempts to preserve his rights and preserve his objection under due process can't be a waiver of those rights. Thank you, Your Honor. Thank you, Counsel. We have your arguments and appreciate your briefing. The matter will be considered.